UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MATTHEW TRENARY**,

    Plaintiff,

vs.                                                                          **Case No: 8:05-CV-1630-T-30EAJ**

**BUSCH ENTERTAINMENT
CORPORATION, a foreign corporation**,

    Defendant.
_____/

**ORDER**

    Before the court are Plaintiff's **Amended Motion to Compel Discovery** (Dkt. 38) and Defendant's **Response** (Dkt. 40). The undersigned has heard oral argument on the above motion. At the court's direction, Defendant thereafter filed the document at issue for in camera review.

    **A.**    **Background**

    In the above-styled action Plaintiff claims injuries as a result of a slip and fall while visiting Busch Gardens amusement park in Tampa, Florida on June 21, 2003 (Dkt. 2). Plaintiff alleges that Defendant's negligence in maintaining a down ramp on the premises created a dangerous condition which caused Plaintiff to slip and fall. Id. Shortly after the incident in which Plaintiff claims he was injured, Plaintiff visited Busch Gardens' First Aid Center where he was given medical treatment by Busch Gardens Emergency Medical Technician ("EMT") Robert Day ("Day") (Dkt. 38 at 3–4). In conjunction with treating Plaintiff, Day filled out a form report labeled "Busch Gardens Health Services Department" which is at issue in the instant motion. Contained in this report is documentation regarding Plaintiff's medical condition at the time of his visit to the First Aid Center, the medical treatment rendered, and Plaintiff's statements regarding the incident.

Day testified in his deposition taken on August 22, 2006 that as an EMT working at Busch Gardens' First Aid Center, he completed this form for each person who sought medical treatment or First Aid for any significant type of injury, other than someone just asking for an aspirin or band-aid (Dkt. 45, Attachs. 4, 5).  Day further testified that if a person required First Aid or their injury was serious enough that the EMT had to call for outside medical attention,[1] the EMTs used the form to record the person's vital signs and to communicate the vital signs to the outside medical personnel (Dkt. 45, Attach. 5).

In his first request for production, Plaintiff asked Defendant to produce "[a]ny and all investigative reports, accident and/or injury reports prepared by Defendant regarding the subject incident" and Defendant objected on the basis of privilege, citing the work product doctrine (Dkt. 38 at 1, 2).  Plaintiff now requests that this court compel Defendant to produce the report prepared by Day in conjunction with Plaintiff's visit to the First Aid Center, arguing that it is merely a medical report prepared pursuant to medical treatment given to Plaintiff shortly after the incident in question and thus, should be discoverable (Dkt. 38 at 4). Defendant argues that the report is not merely a recitation of medical treatment rendered to Plaintiff, but rather is the primary report of the incident which was prepared by Defendant in anticipation of litigation (Dkt. 40 at 3–4). Therefore, Defendant argues, the report is protected from discovery under the work product doctrine. However, Defendant concedes that in addition to the report at issue, a separate, additional accident report was prepared by Busch Gardens staff members.

Whether documents were prepared in anticipation of litigation should be examined on a case

---

[1] At oral argument, Defendant clarified that the Busch Gardens EMTs are in-house staff and that outside medical assistance would have to be summoned if a person needed hospital or further medical care.

by case basis. See Savoie v. Am. Sec. Ins. Co., No. 3:05CV244/MCR/EMT, 2006 WL 1737189, at *1 (N.D. Fla. June 23, 2006) (citation omitted) ("[W]hether documents are 'prepared in anticipation of ligitation' depends upon the material and circumstances of the case."); Abdallah v. The Coca-Cola Co., No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *4 (N.D. Ga. 2000) (citations omitted) (stating that whether documents were prepared in anticipation of litigation turns on the facts of each case). See also Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199, 202 (M.D. Fla. 1990) ("The trend in lower federal courts is to analyze work product claims concerning insurance claims files on a case by case basis."). After considering the motion, the record, and applicable law, the undersigned concludes that in this particular instance, Defendant failed to establish that the report at issue is protected from discovery under the work product doctrine.[2]

### B. The Work Product Doctrine

Federal Rule of Civil Procedure 26(b)(3) provides that documents or tangible things which a party or its representative prepares in anticipation of litigation are protected from discovery, except upon a showing that the party seeking discovery has substantial need for the materials to prepare his case and that the party is unable to obtain the substantial equivalent by other means without undue hardship. Rule 26(b)(3), Fed. R. Civ. P. However, the work product doctrine does not protect documents prepared in the ordinary course of business or for other non-litigation purposes. United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006) (citations omitted); FDIC v. Cherry, Bekaert & Holland, 131 F.R.D. 596, 600 (M.D. Fla. 1990) (citations omitted). In determining whether a document was prepared in anticipation of litigation, key issues the court must consider are the

---

[2] The court's analysis of the applicability of the work product doctrine pertains only to this particular case and report at issue. The court makes no findings or generalizations as to any other incident reports that may be prepared by Defendant in any other matters.

function the document serves, the circumstances surrounding its creation, and the driving force behind its preparation. Roxworthy, 457 F.3d at 595 (citations omitted). "Generally, a document will be deemed to have been prepared 'in anticipation of litigation' when 'the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." Abdallah, 2000 WL 33249254, at *4 (emphasis added) (citing Carver v. Allstate Ins. Co., 94 F.R.D. 131, 134 (S.D. Ga. 1982).[3] Litigation must be "more than a remote possibility"; there must be a substantial probability and real concern that litigation will occur. Savoie, 2006 WL 1737189, at *1 (citation omitted).

The burden is on the party asserting the privilege to establish that the document in question is work product. Hunter's Ridge Golf Co. v. Ga.-Pac. Corp., 233 F.R.D. 678, 681 (M.D. Fla. 2006) (citations omitted). A party can satisfy this burden through a showing of proof such as an affidavit, but the affidavit must contain a specific and detailed factual basis for the privilege and conclusory statements alone are not enough. Roxworthy, 457 F.3d at 597; Suggs v. Whitaker, 152 F.R.D. 501, 505 (M.D.N.C. 1993). If the party claiming the privilege establishes that the document is work product, the burden then shifts to the party seeking discovery to demonstrate substantial need and undue hardship under the two-prong test set forth in Rule 26(b)(3). See McMahon v. E. S.S. Lines, Inc., 129 F.R.D. 197, 199 (S.D. Fla. 1989). If the party seeking discovery makes the required showing to overcome the privilege, the court must "protect against disclosure of the mental impressions, conclusions, or legal theories of an attorney or other representative of a party concerning the litigation." Id. at 198; Rule 26(b)(3), Fed. R. Civ. P.

---

[3] It is not clear whether the Eleventh Circuit has specifically adopted the "because of" test in defining "in anticipation of litigation"; however, the Second, Third, Fourth, Sixth, and Seventh Circuits have articulated and applied this standard. Roxworthy, 457 F.3d at 593. Some district courts within the Eleventh Circuit have also applied the "because of" standard in defining "in anticipation of litigation." E.g., Abdallah, 2000 WL 33249254, at *4; Carver, 94 F.R.D. at 134.

### C.     Discussion

Because Defendant asserts that the report at issue is work product, Defendant bears the burden of proving that the report was prepared in anticipation of litigation. Defendant contends that the report in question was prepared by EMT Day as the primary report documenting Plaintiff's incident. Defendant submits an affidavit of Mr. John Chapman, the Risk Manager at Busch Gardens, which states that the report was "completed specifically with the intent of memorializing the facts and circumstances of [Plaintiff's] incident in any litigation which might ensue." (Dkt. 40, Chapman Aff. at 2). The affidavit asserts that "Busch Gardens' employees gathered information and prepared a report in the anticipation of litigation and for the use of [Defendant's] counsel if an when [Defendant] was sued." Id. Furthermore, the affidavit attests that the report bears the notation: "This form is filled out in anticipation of litigation and must be sent to adjusting firm for legal purposes." Id.

That the form states that it was filled out in anticipation of litigation does not automatically establish it is entitled to work product protection nor does Mr. Chapman's statement that the form was prepared in anticipation of litigation. The primary motivating purpose behind the document's creation must be to aid in possible future litigation. United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb.), cert. denied, 454 U.S. 862 (1981).[4] After reviewing the document and in light of the record, the court concludes that Defendant has not met its burden of establishing that the document is entitled to work product protection.

First, it is likely that the report "would have been prepared in substantially the same manner

---

[4] See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (decisions of the Fifth Circuit rendered before October 1, 1981 are binding upon panels of the Eleventh Circuit).

irrespective of the anticipated litigation." Roxworthy, 457 F.3d at 593–94. Part of Defendant's ordinary business operations is to furnish a First Aid Center where park visitors can obtain medical treatment in the event of an injury. Based on Day's testimony, the EMTs invariably fill out form reports as a matter of course for the purpose of recording a person's injuries and medical treatment received. The form is later used to communicate that information to outside medical personnel if further treatment is necessary. Even if potential litigation were not a consideration, it is reasonable to conclude that a prudent EMT would still prepare the report in substantially the same manner for the significant purpose of serving as a record of a patron's injuries and medical treatment received. In addition, the fact that Defendant concedes that two reports were prepared regarding the incident—the report at issue which outlines medical aid given to Plaintiff, and a separate accident investigation report prepared by a Clarissa Allen—is strong evidence that EMT Day generated the instant report in the ordinary course of business.

Also, the report at issue consists of a one-page form which describes the medical treatment Day rendered to Plaintiff. The report is overwhelmingly factual in nature, more akin to a medical record than an accident investigation report, and the only statements regarding the incident are Plaintiff's.[5] Further, there is no indication that Day was involved in the investigation of the scene of the incident. In fact, the report states that a Clarissa Allen performed the "accident investigation," and Day is the only person whose signature is on the report.[6]

---

[5] At oral argument, Plaintiff's counsel questioned whether Plaintiff is entitled to the report under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). However, this argument has neither been briefed nor developed by the parties; thus, the court makes no ruling on this issue.

[6] The form contains one line labeled "Contributing Factors/Site Inspection" which might appear to contain EMT Day's impression as to the cause of Plaintiff's injuries. However, because

Following an incident of this nature, it is expected that Defendant would designate personnel to conduct an investigation out of concern for possible litigation. See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992). However, there is no evidence that EMT Day was the person charged with this responsibility. Day testified that he worked at the First Aid Center, but he does not testify to, nor is their any explanation of, his duties regarding incident investigation. Similarly, there is no indication that he was apprised of any legal issues involved, nor did he make any factual determinations which were important to preserve Defendant's position for future litigation. See McFadden v. Norton Co., 118 F.R.D. 625, 632 (D. Neb. 1988) (although not overwhelming evidence, the fact that an employee from the marketing division prepared the investigation report for a manufacturing-related injury raised questions as to whether litigation was anticipated at that time).

Furthermore, while the Chapman affidavit's statement that "virtually any incident involving an injury or possible injury to a guest has the potential for resulting in litigation" (Dkt. 40, Attach. 5 at 2) has an element of truth to it, a defendant must establish that this particular report was prepared because of the prospect of litigation. See Nat'l Union, 967 F.2d at 984 ("The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that could reasonably result in litigation."); McFadden, 118 F.R.D. at 632 ("The fact that these reports have been routinely prepared . . . does not establish that this particular report was prepared in anticipation of litigation . . . ."). Mr. Chapman's "virtually any incident" language is conclusory and fails to establish that the report was

---

there is no evidence that Day investigated the scene of the incident and any knowledge that he gained about the cause of Plaintiff's injuries can be attributed to Plaintiff's own statements to Day about the incident, the court finds that the comments in this section of the report should not be redacted.

7

prepared because of the substantial likelihood of litigation in this particular case involving Plaintiff. See McFadden 118 F.R.D. at 631 (affiant's testimony that the receipt of a notice and demand regarding personal injury "almost always" resulted in litigation was insufficient without factual basis of how many claims actually resulted in litigation). Mr. Chapman's affidavit does not state how many guest injuries routinely occur on the premises, how many of these injuries are documented similarly to the report in question, and how many of these guest injuries result in litigation.[7] If Mr. Chapman or Defendant had provided those facts, however, Defendant would still need to demonstrate that this particular report was prepared because of the substantial probability of litigation in this particular case. See id.

Based on the evidence before the court, it appears that the report generated by EMT Day in this case was a "more or less routine investigation of a possibly resistible claim." Janicker v. Geo. Wash. Univ., 94 F.R.D. 648, 650 (D.D.C. 1982). When viewing the document as a whole, the court finds that there are no opinions, mental impressions, or conclusions concerning the litigation that need to be protected; therefore, Plaintiff is entitled to the report in its entirety.

Because the court finds that the report in question is not work product, it is not necessary to proceed to the analysis of whether Plaintiff has shown substantial need and undue hardship to overcome the privilege. Furthermore, based on the parties' apparent resolution of the other issues

---

[7] Additionally, Defendant provides no statistical evidence regarding the "routineness," or lack thereof, of the completion of these reports. For example, Defendant provides no information regarding the number of visits to the First Aid Center on a regular basis, how many injuries occur on the premises daily, monthly, or yearly, or how many of these forms are filled out by park EMTs on a regular basis. Without this evidence, and in light of the fact that the report has a broader use than just litigation, the court must conclude that injuries occur on the premises on a routine and ordinary enough basis for Defendant to justify providing an in-house First Aid Center and employing in-house EMTs.

raised in the motion to compel, the rest of the motion is deemed moot.

It is therefore **ORDERED** and **ADJUDGED** that Plaintiff's **Motion to Compel Discovery** (Dkt. 38) is **GRANTED IN PART**. Defendant is directed to provide Plaintiff with an unredacted copy of the Health Services Department report within ten (10) days of the date of this order. All other relief requested is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida this 28th day of September, 2006.

_____
ELIZABETH A JENKINS
United States Magistrate Judge