UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MATTHEW TRENARY**,

   Plaintiff,

vs.                                                      **Case No: 8:05-CV-1630-T-30EAJ**

**BUSCH ENTERTAINMENT
CORPORATION, a foreign corporation**,

   Defendant.
_____/

**ORDER**

Before the court is Defendant's **Motion for Rule 35 Examinations**, filed October 16, 2006 (Dkt. 51). Plaintiff has not filed a response as of the date of this order and the period for responding has elapsed.[1]

**I.    Background**

Defendant requests an order requiring Plaintiff to submit to mental examinations conducted by Defendant's retained psychiatrist Jeffrey A. Danziger, M.D. ("Dr. Danziger") and neurologist Steven Tresser, M.D. ("Dr. Tresser"). Federal Rule of Civil Procedure 35(a) states, in relevant part:

> When the mental or physical condition . . . of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner. . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Fed. R. Civ. P. 35(a) ("Rule 35"). The "in controversy" and "good cause" requirements of Rule 35

---

[1] The fact discovery period in this case was set to end on November 1, 2006. On October 31, 2006, the court extended the fact discovery deadline to December 1, 2006, solely for the limited purpose of conducting the deposition of witness Amanda Sharp (Dkt. 54).

"are not met by mere conclusory allegations of the pleadings - nor by mere relevance to the case - but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 118 (1964).

Defendant asserts that the court should order mental and neurological examinations of Plaintiff because Plaintiff has placed his mental and neurological condition in controversy based on the assertions in his complaint and answers to Defendant's interrogatories. In his complaint, Plaintiff alleges that he suffers from "mental anguish" and "loss of capacity for the enjoyment of life." (Dkt. 2, Compl. at ¶ 7) Plaintiff also claims "medical and nursing care treatment, loss of earnings, and loss of ability to earn money" that are either permanent or continuing. (<u>Id.</u>)

On February 27, 2006, Plaintiff served his answers to Defendant's first set of interrogatories (Dkt. 51, Attach. 2 at 1). The court finds several of the interrogatories relevant to the issue of whether Rule 35 mental and neurological examinations of Plaintiff are warranted. First, Defendant's interrogatory number 6 requested the following information regarding Plaintiff's lost income:

> Do you contend that you have lost any income, benefits, or earning capacity in the future as a result of the incident described in the Complaint? If so, state the nature of the income, benefits, or earning capacity, and the amount and the method that you used in computing the amount.

(Dkt. 51, Attach. 2 at 7). In response, Plaintiff stated,

> Yes, I have missed several days of work due to doctor appointments and missed 2 weeks straight for TMJ surgery. In addition, I continue to see doctors, so my wage loss is on going. The exact amount is still being calculated.

(<u>Id.</u> at 26). Interrogatory number 9 asked about examining health care providers and read as follows:

> List the names and business addresses of each physician, medical provider or mental health care provider who has treated or examined you, and each facility where you

> have received any treatment or examination for the injuries for which you seek damages in this case; and state as to each the date of treatment or examination and the injury or condition for which you were examined or treated.

(Id. at 10). In response to this question, Plaintiff listed Rosanna Garner, M.D. ("Dr. Garner"). Plaintiff's medical records indicate that Dr. Garner, a neurologist who treated Plaintiff, opined that Plaintiff suffers from post traumatic seizure disorder and post concussive migraines and prescribed him with Paxil, a drug to treat depression and mood swings. (Dkt. 51, Attach. 4). Finally, Defendant's interrogatory number 19 asked Plaintiff to

> List the names and addresses of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any of the issues in the lawsuit; and specify the subject matter about which the witness has knowledge.

(Dkt. 51, Attach. 2 at 20). In addition to listing Dr. Garner as someone who has knowledge as to the issue of damages, Plaintiff listed "any and all medical providers named in Plaintiff's medical records" as having knowledge as to the issue of damages. (Dkt. 51, Attach. 2 at 29). Contained in Plaintiff's medical records is a neuropsychological evaluation by Valerie McCain, Psy. D. ("Dr. McCain"), which diagnoses post traumatic stress disorder as well as anxiousness and depression (Dkt. 51, Attach. 3, at 6).

Defendant alleges that Plaintiff's allegations of mental anguish and loss of capacity for the enjoyment of life in his complaint, coupled with his interrogatory answers that his medical providers, including a neurologist and psychologist, have knowledge as to the issue of damages, place Plaintiff's mental and neurological conditions squarely "in controversy."

Defendant has attempted several times through letters and phone calls to schedule a mental examination of Plaintiff on the basis that Plaintiff's complaint alleges emotional and mental injuries in paragraph 7 (Dkt. 51, Attach. 7 at 1, 3, 5). In response to Defendant's request, Plaintiff has stated

that while he seeks all damages alleged in the complaint, he does not believe that those damages entitle Defendant to obtain a mental examination of Plaintiff. (Id. at 2.) Plaintiff maintains that he is not making psychiatric claims in this case. (Id. at 4.) As previously noted, Plaintiff has not filed any response or opposition to the instant motion.

## II.     Mental Examination

A mental examination is warranted when one or more of the following factors are present: (1) a tort claim is asserted for intentional or negligent infliction of emotional distress; (2) allegations of a specific or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) the plaintiff intends to offer expert testimony in support of a claim for emotional distress damages; and/or (5) the plaintiff concedes that her mental condition is in controversy within the meaning of Rule 35. Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 554 (N.D. Ga. 2001) (citations omitted).[2]

A mere allegation of damages for "emotional distress" does not automatically place a plaintiff's mental condition in controversy for purposes of Rule 35. Ali v. Wang Labs., Inc., 162 F.R.D. 165, 167 (M.D. Fla. 1995); Robinson v. Jacksonville Shipyards, Inc., 118 F.R.D. 525, 528-31 (M.D. Fla. 1988). Here, Plaintiff does not allege a claim for intentional or negligent infliction of emotional distress in his complaint, nor does he claim a specific mental or psychiatric injury or unusually severe emotional distress. Plaintiff has, however, listed in his responses to Defendant's interrogatories doctors who have diagnosed Plaintiff with and treated him for mental conditions such as post traumatic stress disorder, depression, anxiety, mood swings, and lack of concentration, as

---

[2] Even where these five factors have not been expressly recognized, most cases allowing mental examinations involve a claim for emotional distress or an allegation of ongoing severe mental injury. See Stevenson, 201 F.R.D. at 554 (citations and quotations omitted).

persons having knowledge as to the issue of damages in this case (Dkt. 51, Attach. 3 at 5-6; Attach. 4 at 3). Dr. McCain's and Dr. Garner's reports included in support of Defendant's motion indicate that they treated Plaintiff for post concussive migraine headaches, depression, anxiety, mood swings, post traumatic seizure disorder, and post traumatic stress disorder, and that these conditions affected Plaintiff's cognitive and emotional skills after the alleged accident.

Additionally, the damages Plaintiff alleges include ongoing wage loss, which Plaintiff reiterates in his interrogatory responses. In Dr. McCain's report, she made several references to Plaintiff's work, including that he "had to change jobs due to his cognitive defects" and that Plaintiff "works more slowly and [has] difficulty with sequencing." (Dkt. 51, Attach. 3 at 2, 3). Plaintiff's cognitive defects and trouble dealing with the alleged accident emotionally, as evidenced by Dr. McCain's notation of "disturbing recollections of the event, nightmares, avoiding thoughts about the event, hypervigilance, emotional numbing, sleep disturbance, poor concentration and irritability," contribute to Plaintiff's inability to work. (Dkt. 51, Attach. 3 at 5-6).

Therefore, Plaintiff's interrogatory responses that his psychologist and neurologist have knowledge as to the issue of damages in this case place Plaintiff's mental condition in controversy for purposes of Rule 35. See, e.g., Ali, 162 F.R.D. at 167 (plaintiff's responses to interrogatories were sufficient to place plaintiff's mental condition in controversy). The undersigned finds that Defendant should have the opportunity to evaluate Plaintiff's mental condition in light of his claims in this case and there is good cause to order the requested mental examination.

### III. Neurological Examination

A neurological examination is akin to a physical examination for Rule 35 purposes. Here, Plaintiff has placed his neurological condition in controversy because Plaintiff alleges that as a result

of his slip and fall, he suffered a head injury. (Dkt. 51, Attach. 2 at 25). Dr. Garner, Plaintiff's neurologist, diagnosed Plaintiff with and treated him for post concussive migraines and post traumatic seizure disorder as resulting effects of Plaintiff's head injury. (Dkt. 51, Attach. 4 at 3). These neurological conditions are directly related to the issue of damages because, not only is Dr. Garner listed in Plaintiff's responses to the interrogatories as someone with knowledge as to the issue of damages, but Plaintiff's complaint alleges bodily injury, hospitalization, medical and nursing care treatment, loss of earnings, and loss of ability to earn money as permanent or continuing damages as a result of his bodily injury suffered at the hands of Defendant. Therefore, the court finds good cause to order a neurological examination of Plaintiff pursuant to Rule 35.

**IV.     Conclusion**

Finally, because Plaintiff has not filed any response or opposition to the motion, Plaintiff is deemed to have no objection to the relief requested. Similarly, Plaintiff does not object to Defendant's selection of examining physicians. The undersigned finds that Dr. Danziger and Dr. Tresser are qualified to conduct a mental and neurological examination of Plaintiff, respectively, for the purposes authorized in this order. Moreover, Plaintiff has not requested that the court place any limitations or conditions on the examinations. Therefore, in determining the limitations on the examinations, the court considers that the purpose of the examinations is to identify the mental, emotional, or neurological impairment, if any, suffered by Plaintiff, and to determine whether said impairments were caused or exacerbated by the alleged wrongful acts of Defendant as described in the complaint.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED**:

(1)     Defendant's **Motion for Rule 35 Examinations** (Dkt. 51) is **GRANTED** to the extent set

forth below.

(2) Plaintiff shall submit to a mental examination by Dr. Jeffrey A. Danziger. The examination shall be conducted, at Plaintiff's option, at either: a) Dr. Danziger's business office in Maitland, Florida during normal business hours; or b) the business office of a medical professional designated by Defendant in Tampa, Florida during normal business hours. If Plaintiff elects this option, Plaintiff shall bear the reasonable additional costs of time and travel for Defendant's counsel and examining psychologist.

(3) Plaintiff shall submit to a neurological examination by Dr. Steven J. Tresser. The examination shall be conducted at Dr. Tresser's place of business in Tampa, Florida during normal business hours.

(4) The time for each examination shall be limited to four (4) hours.

(5) The examinations shall be conducted at a mutually agreeable time, within fourteen (14) days after the date of this order, unless the parties otherwise mutually agree.

(6) The mental and neurological examinations will focus upon the matters alleged by Plaintiff in his complaint and the mental, emotional, and neurological damages resulting from the alleged misconduct of Defendant as referred to in Plaintiff's medical records, including the post traumatic stress disorder, post traumatic concussive disorder, post traumatic seizure disorder, anxiety, depression, lack of concentration, and other mental conditions evaluated by Plaintiff's physicians and psychologist. Defendant shall provide Dr. Danziger and Dr. Tresser with the appropriate portion of Plaintiff's answers to interrogatories, medical records, and such other documents as it deems appropriate. The examination will include the routine procedures for such an examination. A copy of any report shall be provided to Plaintiff's

counsel.

**DONE** and **ORDERED** in Tampa, Florida this 16th day of November, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge